UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHANIKA DAY, Individually, and as Administrator for the Estate of TERRELL DAY; and HARVEY MORGAN,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF INDIANAPOLIS;<br>SERGEANT FRANKLIN WOOTEN, Individually, and as an IMPD Officer;<br>OFFICER RANDALL DENNY, Individually, and as an IMPD Officer;<br>THE TOWN OF CUMBERLAND;<br>LIEUTENANT ROGER WAGGONER, Individually, and as a Cumberland Officer; and<br>OFFICER JOHN COVINGTON, Individually, and as a Cumberland Officer,<br><br>Defendants. | Case No. 1:17-cv-04612-TWP-TAB |

## DEFENDANT RANDALL DENNY'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

**Interrogatories**

**INTERROGATORY NO. 1:** Please state your full name, police badge or identification number, current address, date of birth, place of birth, social security number, and marital status.

**ANSWER:** Ofc. Denny, by counsel, objects to providing his social security number based on privacy concerns and is wholly irrelevant to the plaintiffs' claims under Federal Rule 26(b)(1). The same objection is lodged as to Ofc. Denny's current address. Subject to and without waiving such Objections, Ofc. Denny answers as follows:

Name: **Randall Jason Denny**
Badge #: **D9879**
D/O/B: **7/13/1973**

EXHIBIT 23

Place of Birth: Indianapolis, IN
Marital Status: Married

**INTERROGATORY NO. 2:** Please state and describe your job title and position held at any **secondary employer** on or prior to September 26, 2015, including but not limited to the following information:

a. The date of your employment;

b. The name, address and official position of the person or persons who hired you;

c. The term for which you were hired;

d. The date on which your employment will terminate; and

e. The name and address of the person, persons or governmental body to whom you are responsible.

**ANSWER:** **I have held no secondary employment.**

**INTERROGATORY NO. 3:** Please state and describe your job title and position held on September 26, 2015, including but not limited to the following information:

a. The date of your employment;

b. The name, address and official position of the person or persons who hired you;

c. The term for which you were hired;

d. The date on which your employment will terminate; and

e. The name and address of the person, persons or governmental body to whom you are responsible.

**ANSWER:** **On September 26, 2015, I was working for the City of Indianapolis as a sworn police officer. I began working for the**

IMPD upon the merger in late 2006. My position was and is a patrol officer.

**INTERROGATORY NO. 4:** Please describe the educational requirements/training that are prerequisites to appointment as a police officer of the Indianapolis Metropolitan Police Department and/or the City of Indianapolis, including the duration and time required for the education/training; and including but not limited to if you graduated from high school and attendance at an academy.

**ANSWER:** **Objection. The City has already provided this information to the plaintiffs through its Answer to Interrogatories and Responses to Request for Production of Documents.**

**INTERROGATORY NO. 5:** At the time of your appointment as a police officer of the Indianapolis Metropolitan Police Department, did you satisfy the prerequisite educational requirements to such appointment? If an answer is in the negative, please state:

a. The basis and authority for your appointment;

b. The conditions, if any, to which your appointment was made subject.

**ANSWER:** **Yes.**

**INTERROGATORY NO. 6:** Were you ever employed as a police officer prior to your appointment as a police officer of the Indianapolis Metropolitan Police Department? If yes, state:

a. The name and address of each person, firm, corporation, municipality or state or federal agency that so employed you;

b. The date that you were employed;

c. The duties you performed while you were so employed;

d. The reason or reasons for the termination of your previous employment as a police officer.

   ANSWER: a. Indiana University Police Indianapolis Division (IUPUI-PD)
       b. July 1997- March 2002
       c.
       d. Left for a better job.

       a. Marion County Sheriff Department
       b. March 2002 – December 2006
       c.
       d. Department merged into IMPD

**INTERROGATORY NO. 7:** Did you receive any special training for the position of police officer of the Indianapolis Metropolitan Police Department? If yes, state:

a. The nature and substance of the training you received;

b. The inclusive dates of the period during which you received training;

c. The name and address of each and every specialized school you attended to receive such training;

d. Dates of attendance at each such specialized school;

e. The nature and substance of the training offered at each such specialized school;

f. Degree or certificate, if any, that you received from each such specialized school.

   ANSWER: Yes. See below.

       a. Aug ILEA (Indiana Law Enforcement Academy) certified law enforcement academy 97-185
       b. May 1997
       e. To become a Law Enforcement Officer in Indiana

       a. Aug IU Police Indianapolis Div. Field Training Officer School
       b. 1999
       e. To become a Field Training Officer for IU Police Indy

       a. ILEA Instructor Development

b. Sept 13-17, 1999
   e. Allows me to teach to other law enforcement officers

   a. Evansville Police Field Training Officer School
   b. March 20-24, 2000
   e. Further training in my position as Field Training Officer for IU Police Indy

   a. ILEA Firearms Instructor
   b. May 8-12, 2000
   e. Allows me to teach firearms to other law enforcement officers

   a. Glock Armorer course
   b. May 29, 2001
   e. Allowed me to repair issued handguns at IU Police Indy

   a. Marion County Sheriff Dept. Road Patrol Orientation
   b. April 1-18, 2002
   e. When hired to MCSD from IUPD, this class brought me up to speed with Marion County practices

   a. Marion County Sheriff Taser Certification
   b. April 29, 2004
   e. Allows me to carry the X26 Taser while on duty

   a. Weapons of Mass Destruction Incident Complexities Taught by US Dept. of Homeland Security
   b. April 4-5, 2005

   a. Indiana University School of Medicine, Department of Toxicology "Breath Test for Intoxicants" Certification
   b. September 12-13, 2005
   e. Operator of breath test instruments for DUI investigations

   a. Marion County Sheriff Dept. Patrol Rifle School
   b. July 17-21, 2006
   e. Allows me to carry a patrol rifle

   a. FEMA Incident Command System for Single Resources and Initial Actions
   b. November 7, 2007

   a. FEMA Introduction to the Incident Command System
   b. November 7, 2007

a. IMPD Combatives Instructor School
b. November 2-6, 2009
e. Allows me to teach Combatives (Physical Tactics) to fellow IMPD officers/recruits

a. FEMA Field Force Operations
b. November 9-11, 2010

a. IMPD Pepperball Launcher Certification
b. October 2011
e. Allows me to carry and deploy Pepperball less lethal launcher

a. IMPD Structure Clearing Course
b. February 26-28, 2014
e. Training for room and building searches

a. IMPD My Legacy Mentorship Training
b. May 20-22, 2015
e. Training to become an IMPD Mentor for recruits in IMPD Academy and IMPD officers who might need help

a. IMPD Level 1 Survival Tactics Instructor Certification
b. June 5, 2015
e. Training to allow me to teach the revamped Survival Tactics (Combatives) to fellow IMPD officers and recruits

a. IMPD Field Training Officer School
b. January 11-15, 2016
e. Became an FTO for IMPD recruit officers

a. Mental Health First Aid Train the Trainer
b. April 17-20, 2017
e. Teach the IMPD Department Mental Health First Aid

a. Surviving Verbal Conflict: Verbal De-escalation Train the Trainer Program
b. September 5-8, 2017
e. Teach the IMPD Department verbal de-escalation

a. ILEA Physical Tactics Instructor Course
b. September 25-29, 2017
e. Allows me to teach physical tactics to ANY law enforcement officer in Indiana, not just IMPD

a. High Risk Control Options

b. October 9-12, 2017
   e. New control methods to handle resistors or non-compliant subjects

   a. ILEA Ground Combatives Instructor Course
   b. October 23-26, 2017
   c. Allows me to teach ground fighting to ANY law enforcement officer in Indiana, not just IMPD

**INTERROGATORY NO. 8:** Were you ever a Defendant in any suit which charged you, individually or in your official capacity as a police officer of the Indianapolis Metropolitan Police Department, with abuse of your lawful authority or any crime while in your position as Police Officer? If yes, state for each such suit:

a. The name and address of each Plaintiff;

b. The name and address of each Defendant;

c. The nature of the cause of action;

d. The date on which the suit was instituted;

e. The Court in which the suit was instituted;

f. The name and address of the attorney for each party;

g. The result of each suit that has been concluded by a judgment or settlement.

   **ANSWER:** Yes. See generally, Case No. 1:09-cv-1484-SEB-TAB, and 1:11-cv-01256-TWP-DKL. Both were filed in the U.S. District Court for the Southern District of Indiana.

**INTERROGATORY NO. 9:** Were there in existence on or prior to September 26, 2015, internal administrative procedures designed to prevent and correct instances of abuse of the authority of police officers of the Indianapolis Police Department? If yes, state:

a. The nature of such procedure;

b. The person or persons responsible for implementing such procedures.

        **ANSWER:**    Yes. Objection. The City has already provided this information to the plaintiffs through its Answer to Interrogatories and Responses to Requests for Production. See generally, such Answers and Responses.

**INTERROGATORY NO. 10:**    If the answer to Interrogatory number 13 is in the affirmative, have you ever been subject to such internal administrative procedures? If yes, state:

a. The substance of any charges made against you in each such procedure;

b. The name and address of all persons who referred such charges;

c. The date and outcome of each such procedure, including the date and nature of such disciplinary action against you, if any were taken;

d  The name and address of the person or persons responsible for administering such disciplinary action, if any.

        **ANSWER:**    No. I was the subject of an internal affairs ("IA") investigation following Mr. Day's death. The results of that IA were that I did nothing wrong and was exonerated. See generally, City's Responses to the plaintiffs' Requests for Production of Documents.

**INTERROGATORY NO. 11:**    Did you have any encounter, contact, and arrest with Terrell Day on September 26, 2015? If yes, state specifically and in detail, as accurately as you can remember, the exact sequence of events that occurred prior to, during and subsequent to your encounter, contact, and arrest with Terrell Day.

        **ANSWER:**    Objection. This question is ambiguous and vague: "Did [I] have any…arrest with…Day…?" What does that mean? In answering this Interrogatory generally, yes I did encounter, have contact with, and arrest Terrell Day on September 26, 2015. At 1255hrs, I was dispatched to a shoplifter armed with a handgun, running from Burlington Coat Factory and being followed by a loss prevention officer from that store. Cumberland Officer Covington backed me up on this run. Mr. Day was running and being followed by loss prevention, running

north through the Washington Square Mall parking lot towards 10th St. They were last seen running towards the Speedway Gas located at the NE corner of 10th Street and Mitthoeffer Road. I was approaching from the west on 10th Street and Officer Covington was approaching from the east on 10th Street. We both arrived at 1256hrs, close to the same time in the parking lot to the rear of the Speedway Gas Station. The Burlington loss prevention officer was flagging us down. I got to Mr. Day just seconds ahead of Officer Covington. Mr. Day was laying in the grass on the east side of the Speedway Gas with a handgun on the ground right next to him. He was laying on his stomach, breathing very hard, sweating heavily. I noticed that he was an obese young man who had just sprinted approximately ½ miles to where I found him. So the fact that he was breathing hard and sweaty was not surprising. I also immediately noticed a strong smell of human feces. I looked at his crotch area and could see that he had defecated in his pants, which caused a large fecal stain that was plainly visible. I placed Mr. Day into handcuffs and helped him off his stomach and onto his feet. Considering that he had fresh fecal matter that had soaked through his pants, I elected to walk him over to the grassy area to the rear of the gas station. The grassy area had about a 20-degree angle to it. Mr. Day told me he was having trouble breathing and I instructed him to try to slow his breathing down, to take deeper breaths, and try to relax since he had exerted himself. I helped Mr. Day sit on the slope, in the hopes that the angle was helpful to allow him to sit up considering his very large size. He initially sat as I had hoped, feet facing down the slope, on his butt, sitting with his back straight up. However, Mr. Day then leaned backwards and proceeded to roll sideways and onto his stomach. Mr. Day was handcuffed with his hands behind his back, and having a person his size with his hands behind his back, rest on his stomach, could be dangerous. So I then helped him back onto his butt and into the upright seated position. However, he proceeded to roll to his side and back onto his stomach. I helped him back onto his butt at least 1 or 2 more times until I was able to keep him from rolling onto his stomach by leaving him on his back. During this time, Mr. Day was awake, conscious, and alert. I did not have much conversation with him outside of his instructions to stop rolling on his stomach. Once on his back, I began my investigation. IMPD Sgt. Wooten and Cumberland Police Lt. Waggoner were on the scene by then and so they assisted me by watching Mr. Day as I collected the handgun next to him and spoke to the loss prevention officer from Burlington Coat Factory, and completed the investigation and paperwork. As I was doing that,

Mr. Day was stood up (not sure who stood him up), and Lt. Waggoner began to give him a bottle of water that he got from the liquor store next to our location. Mr. Day was drinking the water and talking to them; however, I was going back and forth from my patrol car and was involved in the investigation of the incident and completing the necessary paperwork. Based on Mr. Day's complaints, Sgt. Wooten decided to call for EMS to evaluate Mr. Day at 1302hrs, seven (7) minutes after I first arrived to the scene. At 1311hrs, EMS arrived and eventually determined that Mr. Day did not need to be transported to the hospital, and that he could be released back into our custody. I then placed Mr. Day under arrest for pointing a firearm and theft. At 1328hrs, a Marion County Sheriff Office transport wagon was called to perform the transport to the Arrestee Processing Center. The wagon arrived at 1343hrs and the wagon driver determined that Mr. Day would not be able to be transported; rather, Mr. Day apparently needed to be evaluated by EMS again. Again, I was going back and forth from my patrol car, not having much interaction with Mr. Day, trying to complete the arrest paperwork. The second ambulance arrived at 1356hrs, and Mr. Day passed away while inside being evaluated by the medics.

**INTERROGATORY NO. 12:** Were any other persons other than yourself involved in the arrest of Terrell Day on September 26, 2015? If yes, state:

a. The name, badge or identification number, and present address of each such person;

b. The nature of your relationship with each such person; and

c. The nature and extent of the involvement of each such person in the arrest of Terrell Day.

**ANSWER:** Ofc. Denny, by counsel, objects to the term "involved." It is vague and undefined. Subject to and without waiving such Objection, Ofc. Denny states that the two Cumberland Police Officers were at the scene providing assistance. Sgt. Wooten was at the scene to provide backup and was there in his supervisory capacity as Sergeant. I was the arresting officer. The loss prevention officer from Burlington Coat Factory was also there.

**INTERROGATORY NO. 13:** Prior, during, and subsequent to the arrest of Terrell Day on September 26, 2015, did you participate in any kind of communication or conversation relating to his arrest with any other persons including personnel with the Indianapolis Metropolitan Police Department and medical providers? If yes, state:

a. The date and time of each such conversation or communication;

b. The name, badge or identification number, and present address of each such person who participated in each such conversation or communication;

c. The substance of each such conversation or communication;

d. Whether each such conversation or communication or a portion thereof was oral or written.

> **ANSWER:** **Yes, I likely communicated with the other officers and individuals at the scene. I also provided an oral interview to IMPD Internal Affairs on January 21, 2016 at 9:00AM.**

**INTERROGATORY NO. 14:** Were you and the other persons involved in the arrest of Terrell Day, on September 26, 2015, acting in your official capacities as police officers of the Indianapolis Metropolitan Police Department? If the answer is in the affirmative, please state the precise grounds and legal authority for the arrest of Terrell Day on September 26, 2015.

> **ANSWER:** **I can only speak for myself. But yes, I was acting in my official capacity as an IMPD officer. Mr. Day was alleged to have committed theft at the Burlington Coat Factory; he also brandished a firearm while attempting to flee therefrom.**

**INTERROGATORY NO. 15:** Please state and describe all emergency actions you took after Terrell Day experienced respiratory distress from lying on his back with his hands handcuffed, including but not limited to any medical personnel contacted, radio transmissions to the Police Department or other calls made to assist in the survival of Terrell Day.

**ANSWER:** Ofc. Denny, by counsel, objects to this Interrogatory to the extent it assumes Day "experienced respiratory distress from lying on his back with his hands handcuffed." Subject to and without waiving such Objection, Ofc. Denny states: I was the arresting officer on the scene; thus, from the moment I arrived on scene and placed him in handcuffs, I was tasked with completing the investigation, paperwork, gathering evidence, speaking with witnesses and various other tasks necessary a suspect is placed under arrest. Sgt. Wooten and the other Cumberland officers were very close in proximity to Day for much of the time and Sgt. Wooten contacted IMPD control and requested an ambulance for a medical evaluation of Mr. Day on two (2) separate occasions.

**INTERROGATORY NO. 16:** Was any written or oral report made of the incident involving Terrell Day on September 26, 2015? If yes, state:

a. The name, badge or identification number and present address of the person or persons who prepared each such report;

b. The name, badge or identification number, and present address of the person or persons for whom each such report was prepared;

c. The date, time and place where each such report was prepared;

d. The name, badge or identification number, and present address of the present custodian of each such report.

**ANSWER:** Yes. Sgt. Wooten completed the initial arrest/death investigation report IMPD Case #PD15111643. That report was completed on 09-26-2015 in the afternoon. I was unable to complete it because once Day died, I was part of the investigation pursuant to IMPD policy.

**INTERROGATORY NO. 17:** State the name and address or otherwise identify and locate Any person or persons who, to your knowledge, or to the knowledge of your agents and

attorneys, report to have knowledge of facts relevant to arrest of Terrell Day on September 26, 2015.

> **ANSWER:** Michael Nesbitt, 10122 King Arthur Drive #E, Indianapolis, IN 46229;
> Derek Earp, 1857 Winfield Park Drive, Greenfield, IN 46140;
> Anna Mahoy 7145 Old House Rd #C, Indianapolis, IN 46256.

**INTERROGATORY NO. 18:** Do you, your attorneys or any persons employed by you or your attorneys, have possession or know of the existence of any books, videos records or reports made in the ordinary course of business, other printed or documentary material, photographs, videos, recordings, drawings or documents, or other tangible objects that are relevant to the arrest of Terrell Day on September 26, 2015? If yes, state:

   a. The name and description of each such item;

   b. The name and address of each person who made, prepared, or took each such item;

   c. The name and address of the present custodian of each such item;

   d. The date, time and place where such item was made or taken;

   e. The method by or which each such item was made, prepared or taken;

   f. The manner in which each such item is relevant to the arrest of Terrell Day on September 26, 2015.

> **ANSWER:** See generally, City's Responses to the plaintiffs' Request for Production of Documents.

**INTERROGATORY NO. 19:** Have you ever been arrested and/or convicted or any crime whatsoever? if yes, state the offense, date of occurrence, location and disposition of the case.

> **ANSWER:** Yes, July 1992 in Indianapolis for theft. The case was dismissed.

**INTERROGATORY NO. 20:** Have you received any discipline from the Indianapolis Metropolitan Police Department or the City of Indianapolis as a result of the incident involving Terrell Day, on September 26, 2015? If yes, state:

a. The nature of the discipline;

b. The facts on which the discipline was based;

c. Who ordered the disciplinary action;

d. Who administered the discipline.

**ANSWER:** No.

**INTERROGATORY NO. 21:** Describe the policies and procedures for handcuffing an individual as a Police Officer of the Indianapolis Metropolitan Police Department.

**ANSWER:** **IMPD General Order 8.1 discusses the information sought in this Interrogatory. Ofc. Denny refers the plaintiffs to that GO.**

**INTERROGATORY NO. 22:** Do you intend to call an expert at trial? If yes, state:

a. The name and address of each expert witness;

b. A summary of the testimony you expect each expert witness to present.

**ANSWER:** **The hiring or retention of experts have not yet been contemplated by the undersigned counsel. If and when that that decision is made, the appropriate disclosure will be made pursuant to the CMP for this case.**

**INTERROGATORY NO. 23:** Please provide an itemized list of each piece of evidence you intend to offer at trial, including any and all evidence intending to show that Terrell Day, was in any way responsible for his death on September 26, 2015.

**ANSWER:** An exhibit list will be filed consistent with the CMP for this case.

**INTERROGATORY NO. 24:** State whether you, any other police officers, investigators, or any other individual(s) has knowledge of video surveillance footage of the arrest of Terrell Day. Please provide a detailed chain of custody regarding the surveillance footage, its current physical location, and the party/parties in possession of said video surveillance footage.

**ANSWER:** Video footage from a neighboring business as well as from a bystander were obtained. The chain of custody for such footage is unknown. Aside from that footage, I have no knowledge of any video surveillance from IMPD relating to the arrest.

**INTERROGATORY NO. 25:** Please provide a factual basis for each Affirmative Defense you assert in your Answer in response to Plaintiff's Complaint for Damages.

**ANSWER:** The affirmative defenses in the Defendants' Answer and Affirmative Defenses speak for themselves. Discovery has just begun in this case and it is currently unknown what affirmative defenses any of the Defendants may pursue in a dispositive motion or at trial.

Respectfully submitted,

*/s/ Adam S. Willfond*
Adam S. Willfond (31565-49)
OFFICE OF CORPORATION COUNSEL
200 E. Washington Street, Suite 1601
Indianapolis, IN 46204
317.327.4055 (T)
317.327.3698 (F)
adam.willfond@indy.gov

## VERIFICATION

I hereby swear and/or affirm subject to the penalties for perjury that the foregoing representations are accurate to the fullest of my knowledge and belief.

__**04-09-2018**__
Date

_____
Randall Denny

## CERTIFICATE OF SERVICE

I hereby certify the foregoing DEFENDANT RANDALL DENNY'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES was served on the following via U.S. Mail, first class and postage prepaid on this 12th day of April, 2018:

Nathaniel Lee
LEE COSSELL CROWLEY LLP
151 N. Delaware Street, Ste 1500
Indianapolis, IN 46204

David A. Izzo
SELECTIVE STAFF COUNSEL OF INDIANA
11711 N. Meridian Street, Ste 755
Carmel, IN 46032

/s/ Adam S. Willfond
Adam S. Willfond