# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

May 15, 2020

To:   Roger A. G. Sharpe
      UNITED STATES DISTRICT COURT
      Southern District of Indiana
      United States Courthouse
      Indianapolis , IN 46204-0000

|  |  |
|---|---|
| No. 19-1930 | SHANIKA DAY, et al.,<br> Plaintiffs - Appellees<br><br>v.<br><br>FRANKLIN WOOTEN, et al.,<br> Defendants - Appellants |

| **Originating Case Information:** |
|---|
| District Court No: 1:17-cv-04612-TWP-TAB<br>Southern District of Indiana, Indianapolis Division<br>District Judge Tanya Walton Pratt |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:          No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                          **Received by:**

_____5/15/2020_____                    _____

                                           Deputy Clerk, U.S. District Court

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

January 10, 2020

Before:     FRANK H. EASTERBROOK, Circuit Judge

DANIEL A. MANION, Circuit Judge

AMY C. BARRETT, Circuit Judge

| No. 19-1930 | SHANIKA DAY, et al., Plaintiffs - Appellees v. FRANKLIN WOOTEN, et al., Defendants - Appellants |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:17-cv-04612-TWP-TAB Southern District of Indiana, Indianapolis Division District Judge Tanya Walton Pratt ||

The district court's judgment denying Officer Denny and Sergeant Wooten's qualified immunity defense is **REVERSED**, with costs, and the case is **REMANDED** for proceedings consistent with this opinion.

The above is in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 19-1930

SHANIKA DAY, et al.,

*Plaintiffs-Appellees*,

*v.*

FRANKLIN WOOTEN, et al.,

*Defendants-Appellants*.

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17-cv-04612 — **Tanya Walton Pratt**, *Judge*.

———————

ARGUED NOVEMBER 6, 2019 — DECIDED JANUARY 10, 2020

———————

Before EASTERBROOK, MANION, and BARRETT, *Circuit Judges*.

MANION, *Circuit Judge*. Terrell Day died tragically while in police custody on September 26, 2015. This occurred while his hands were cuffed behind his back after he had winded himself during a chase following an apparent shoplifting. The autopsy report concluded his cause of death was a lack of oxygen in his blood, caused in part by his obesity, an underlying heart condition, and restricted breathing due to having his

hands cuffed behind his back. In this § 1983 excessive force action brought against the arresting officers, the district court concluded the officers were not entitled to qualified immunity because "reasonable officers would know they were violating an established right by leaving Day's hands cuffed behind his back after he complained of difficulty breathing." For the reasons set forth below, we disagree with the district court's conclusion of law and accordingly reverse.

## I.    Background

### A.  Assumed Facts

Before relating the facts, we first address which facts we must accept or assume for purposes of this interlocutory appeal of the denial of qualified immunity. The plaintiffs argue we must accept both "the 'facts that the district court assumed when it denied summary judgment,' and … 'the plaintiff's version of the facts.'" This misstates the standard established by our case law. We are instead presented with a choice between "[s]everal sources of undisputed facts [that] may frame our review" of the purely legal question presented by a denial of qualified immunity. *White v. Gerardot*, 509 F.3d 829, 833 (7th Cir. 2007). We may "take, as given, the facts that the district court assumed when it denied summary judgment." *Id.* (quoting *Washington v. Haupert*, 481 F.3d 543, 549 n.2 (7th Cir. 2007)). Alternatively, "we may conduct our review by 'accepting the plaintiff's version of the facts.'" *Id.*; *see also Jewett v. Anders*, 521 F.3d 818, 819 (7th Cir. 2008). And finally, whether we accept the district court's assumed facts or the plaintiff's version of the facts, we may also look to undisputed evidence in the record even if the district court did not consider it. *White*, 509 F.3d at 833 n.5; *see also Thompson v. Cope*, 900 F.3d 414, 419 (7th Cir. 2018).

Although we are free to choose either the district court's assumed facts or the plaintiff's version, it is most often appropriate to accept the facts assumed by the district court in its denial of summary judgment. *Haupert*, 481 F.3d at 549 n.2. Accordingly, we accept the district court's statement of facts. *See Day v. City of Indianapolis*, 380 F. Supp. 3d 812, 817–21 (S.D. Ind. 2019). In a few instances, which we note, we look to undisputed evidence not included in the district court's order but provided elsewhere in the record.

Terrell Day was eighteen years old and weighed approximately 312 pounds[1] at the time of his death, with a history of obesity and an underlying heart condition. On September 26, 2015, Day was confronted by a loss-prevention officer outside the Burlington Coat Factory at Washington Square Mall in Indianapolis after Day apparently shoplifted a watch from the store. Day returned the watch but refused to return to the store with the loss-prevention officer. A mall security officer who joined the confrontation noticed Day had a gun in his pocket. There are varying accounts of what occurred next, but it is undisputed that a chase ensued in which Day ran out of the mall, through the parking lot, and across a street to a gas station. He there collapsed on a grassy slope. Law enforcement soon arrived in response to a radio call describing an armed shoplifter. At this point, the gun was no longer on Day's person, but was lying in the grass a few feet away and out of his reach.

Officer Denny, the second officer to arrive on scene, handcuffed Day behind his back with a single set of handcuffs. He

---

[1] Day's approximate weight was recorded in the autopsy report. (Appellant's Separate Appendix ("S.A.") at 811.)

testified that Day's hands came together easily behind his back. He noticed Day was overweight, sweating, and breathing heavily. Day told the officers he was having trouble breathing; Officer Denny told Day he had exerted himself by running and instructed him to take deep breaths in and out to slow his heart rate. Officer Denny otherwise did not observe any signs of distress or of Day's trouble breathing.

Officer Denny initially instructed Day to remain in an upright seated position, which he believed to be the most comfortable position for Day and ideal for the officers' safety. However, Day would not maintain this position, but instead laid down and rolled down the slope. After two attempts to keep Day seated upright, Officer Denny instead positioned Day to lie on his side. Officer Denny believed this was the best course of action to prevent Day from asphyxiating by rolling onto his stomach. While repositioning Day, Officer Denny observed Day had defecated on himself. He attributed this to Day having over-exerted himself during the chase.

Sergeant Wooten arrived shortly after Officer Denny detained Day. Sergeant Wooten monitored Day while Officer Denny completed his investigative duties as the arresting officer. Sergeant Wooten and other officers repositioned Day several times when he rolled onto his stomach. Day complained to Sergeant Wooten that he could not breathe; however, Sergeant Wooten was skeptical of these complaints because Day also claimed to have done nothing wrong and was asking to be released. All the same, Sergeant Wooten called for an ambulance to evaluate Day approximately five minutes after Day was initially detained. Sergeant Wooten observed that Day appeared to calm down and began to breathe normally.

The ambulance arrived, and two paramedics examined Day. In response to their questions, Day told the paramedics he had no preexisting medical conditions. He was able to speak to them in clear, full sentences. Their examination involved multiple tests, including listening to Day's breathing and checking his heart rate, respiratory rate, and blood oxygen saturation.[2] Day's hands remained cuffed behind his back throughout the examination. The paramedics concluded Day was breathing regularly and normally. Based on their examination, the paramedics believed Day did not need to go to a hospital.

At that point, the paramedics asked Sergeant Wooten to sign a release form so they could transfer custody of Day back to law enforcement. Sergeant Wooten did so. The form he signed was called a "Treatment/Transport Refusal," and is meant to be signed by a patient when he refuses to be transported to the hospital after being evaluated by paramedics. However, when the paramedics determine a handcuffed prisoner does not need to be transported to the hospital, they have an officer sign the form as a witness of the transfer, not as a representative of the prisoner.

Officer Denny requested a "jail wagon" to transport Day to a detention facility. When the jail wagon arrived, the driver found Day unresponsive. At that point Day was lying on his back on the asphalt with his hands still cuffed behind his back. When the driver and Sergeant Wooten attempted to stand Day up, his legs straightened and his knees locked. When Day

---

[2] The record is unclear on the duration of this examination, but at argument counsel for the officers estimated it occurred over the course of ten to fifteen minutes.

failed to respond either verbally or physically to two "sternum rubs" (a painful stimulus administered to an unresponsive subject's chest to invoke a reaction), the driver asked Sergeant Wooten to call a second ambulance.

The second ambulance arrived with a different team of paramedics, approximately forty-three minutes after the first ambulance had arrived.[3] Sometime between the departure of the first ambulance and the arrival of the second, a second pair of handcuffs was added to Day's wrists.[4] When the paramedics arrived, Day's eyes were open, and he was breathing, but his pulse was weak. Day was loaded into the back of the ambulance and the paramedics began to perform CPR. After attempting without success to revive Day for 30 minutes, he was pronounced dead. The coroner dispatched to the scene examined Day's body and found no visible signs of trauma. However, the autopsy report listed his cause of death as "Sudden Cardiac Death due to Acute Ischemic Change." Listed as contributory causes were "Sustained respiratory compromise

---

[3] The Coroner's Report records that the first ambulance arrived at "approximately 1:09 PM" and the second ambulance arrived at "approximately 1:52 PM." (S.A. at 824–25.) Assuming the estimation that the first medical examination lasted approximately ten to fifteen minutes is accurate, we can surmise that roughly thirty minutes passed between the departure of the first ambulance and the arrival of the second. The exact amount of lapsed time, however, is not important for our purposes.

[4] Adding a second pair of handcuffs, by attaching one to each wrist and connecting them in the middle, is a method used on larger arrestees to make the arrestee more comfortable by lessening the restrictiveness of the handcuffs. *See, e.g., Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 589 (7th Cir. 1997); *Day*, 380 F. Supp. 3d at 821.

due to hands cuffed behind the back, obesity, underlying cardiomyopathy."

Throughout his time in custody, Day never complained the handcuffs were too tight. Day complained of trouble breathing, but never indicated this was caused or exacerbated by the handcuffs. The first team of paramedics never asked the officers to remove or modify the handcuffs or add a second pair. In addition to the coroner's report that Day exhibited no visible signs of trauma, the autopsy report states there were no "encircling contusions" or lacerations around Day's wrists.[5] The only indication that the handcuffs were causing a respiratory issue was the autopsy report, which also identified for the first time his underlying heart condition.

### B. District Court Proceedings

Day's mother and father sued under § 1983 in September 2017, and the defendants moved for summary judgment. Officer Denny and Sergeant Wooten asserted qualified immunity. After considering the summary judgment motion, the district court held Officer Denny and Sergeant Wooten were not entitled to qualified immunity. The court first determined it could not hold as a matter of law the officers had not violated Day's Fourth Amendment right against unreasonable seizure. *Day*, 380 F. Supp. 3d at 824–26. The court next concluded "reasonable officers would know they were violating an established right by leaving Day's hands cuffed behind his back after he complained of difficulty breathing." *Id.* at 827.

In arriving at this conclusion, the district court cited an unreported district court case to establish that officers act

---

[5] (S.A. at 811.)

unreasonably by failing to consider an injury or condition when handcuffing an arrestee. *Id.* (citing *Salyers v. Alexandria Police Dep't*, 2016 WL 2894438, at *3 (S.D. Ind. May 18, 2016)). The district court also quoted a decision of this court for the proposition that using excessively tight handcuffs and yanking the arms of non-resisting, non-dangerous arrestees suspected of committing only minor crimes is clearly established as unlawful. *Id.* (quoting *Payne v. Pauley*, 337 F.3d 767, 780 (7th Cir. 2003)). Based on these cases, and the fact that Day complained of difficulty breathing and the officers "observed some signs of distress," the court held the officers' conduct was clearly established as a violation of Day's rights. *Id.* at 828. The court denied qualified immunity. The officers appealed.

## II. Discussion

### A. Jurisdiction

We first address jurisdiction. Appellate jurisdiction is limited to review of final decisions of the district courts. 28 U.S.C. § 1291. Although we generally may not review a district court's order until a final judgment is entered resolving all claims of all parties, the finality requirement is satisfied where a collateral order "conclusively determines a disputed question that is separate from the merits of the case and is effectively unreviewable on an appeal from the final judgment." *Jones v. Clark*, 630 F.3d 677, 679 (7th Cir. 2011) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). A summary judgment order denying qualified immunity to a public official defendant is such an order that can be immediately reviewable "to the extent that it turns on an issue of law." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985)).

The plaintiffs assert we lack jurisdiction over this appeal because the defendants, despite claiming to concede the district court's assumed facts viewed in the light most favorable to the plaintiffs, are asserting their own preferred version of facts on disputed questions. We have already discussed why the plaintiffs are wrong to argue that we and the defendants must accept the plaintiffs' version of the facts in this appeal. It is true, however, that we cannot decide disputed fact questions in a qualified immunity appeal. We only have jurisdiction "when the party seeking to invoke it makes a purely legal argument that does not depend on disputed facts." *White*, 509 F.3d at 833. Therefore, we must first determine whether the defendants' argument depends on disputed issues of fact, which would preclude our review.

The primary factual dispute identified by the plaintiffs is whether the first team of paramedics' medical evaluation was terminated because Day was medically cleared or because Wooten refused further medical treatment. They assert the district court acknowledged this as a disputed issue by stating "Plaintiffs believe Sergeant Wooten refused hospitalization on Day's behalf, and had he not signed the Treatment/Transport Refusal form, the paramedics may have decided to transport Day to the hospital." *Day*, 380 F. Supp. 3d at 820. At argument, the plaintiffs also pointed to evidence that the paramedics may have included false information in their medical report or may have been prevented from conducting a full examination due to Day's hands being cuffed behind his back.

As an initial matter, the suggestion that the paramedics included false information in their report or failed to properly complete a full evaluation are irrelevant to what Officer

Denny and Sergeant Wooten knew at the time of the incident. Our analysis hinges on whether reasonable officers under the circumstances would know their conduct violated a clearly established right. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (holding that, in an excessive force case, "the 'reasonableness' of the use of force is judged from the perspective of a reasonable officer on the scene"). Therefore, the only relevant question is what the paramedics communicated to the officers at the scene.

The district court recognized as undisputed that the paramedics concluded, based on their evaluation, "Day did not need to be transported to the hospital for medical treatment." *Day*, 380 F. Supp. 3d at 820. The paramedics testified that law enforcement has no authority to refuse transport to a hospital if the medical personnel believe hospitalization is necessary. Sergeant Wooten could not terminate the examination because he had no authority to do so. The district court also found that when an officer signs for a handcuffed arrestee, he "signs this form as a witness to the transfer, not as a representative of the detainee," and that the medics require an officer to sign the form "when [they] decide that a handcuffed prisoner is not going to go to the hospital." *Id.* Thus, regardless of the title or intended use of the form Sergeant Wooten signed, there is no genuine dispute that the paramedics concluded their evaluation because they believed Day did not need further treatment.

Moreover, even assuming a factual dispute exists regarding the termination of the examination, we need not resolve that dispute to reach our conclusion today. Even if the officers were not entitled to rely on the judgment of the medical

professionals, they were still entitled to qualified immunity because there was no clearly established law to put the officers on notice that handcuffing Day under the circumstances of this case violated his constitutional rights.

The plaintiffs also dispute whether a second pair of handcuffs was added to Day's wrists and, if so, when it was added. But the district court assumed in its statement of facts that a second pair of handcuffs was added, and that the second pair was added before the second ambulance arrived. *Id.* at 821. Since we accept the district court's assumed facts for this appeal, we assume this as well. Furthermore, as we explain below, the addition of the second pair of handcuffs does not change the outcome of this case. Accordingly, we have jurisdiction to address the purely legal question presented by this appeal.

## B.  Denial of Qualified Immunity

We review *de novo* a district court's denial of summary judgment on a qualified immunity defense. *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). As explained previously, we accept the facts assumed by the district court and the undisputed record evidence viewed in the light most favorable to the plaintiffs. *White*, 509 F.3d at 833 & n.5.

A public official defendant is entitled to qualified immunity unless two disqualifying criteria are met. First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right. Second, that right must have been clearly established at the time of the violation. *Stainback v. Dixon*, 569 F.3d 767, 770 (7th Cir. 2009). Courts may "exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that *what he is doing* violates that right.'" *Mullenix*, 136 S. Ct. at 308 (emphasis added).

The Fourth Amendment protects an individual's right to be free from unreasonable seizures of his person. U.S. Const. amend. IV. When an officer uses greater force than reasonably necessary to make an arrest, he violates the arrestee's Fourth Amendment right. *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). Importantly, "the 'reasonableness' of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Sow*, 636 F.3d at 303.

To defeat qualified immunity, however, the right must be defined more specifically than simply the general right to be free from unreasonable seizure. The Supreme Court has stated that "[s]pecificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

The district court defined the rights at issue as Day's right to be free from excessively tight handcuffs and his right to have the officers consider his injury or condition in determining the appropriateness of the handcuff positioning. The court concluded that the officers' conduct violated those rights. However, there is no Seventh Circuit precedent clearly establishing that the conduct the officers engaged in violated either of those rights.

The plaintiffs point to *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), and identify it as the best case to clearly establish the right to be free from excessively tight handcuffs. The district court quoted and cited this case for that principle as well. In *Payne*, we established the following right: "it was unlawful to use excessively tight handcuffs and violently yank the arms of arrestees who were not resisting arrest, did not disobey the orders of a police officer, did not pose a threat to the safety of the officer or others, and were suspected of committing only minor crimes." *Id.* at 780. In *Payne*, the plaintiff alleged (and we accepted for purposes of the appeal) that two police officers grappled and struggled over her arm for thirty minutes as they argued about who would handcuff her, jerked her arm behind her back, slammed handcuffs onto her wrist, tightened them so tight that she experienced pain and numbness in her hands, and refused to loosen them when she complained. *Id.* at 774–75. The plaintiff alleged she was treated this way even though she was not resisting and had committed no offense other than voicing disagreement with an irate officer's racist remarks. *Id.*

*Payne* does not help the plaintiffs because it involves circumstances and conduct drastically different than this case. Day was suspected of shoplifting while armed with a gun, a much more serious offense than the plaintiff in *Payne* (who had allegedly done nothing wrong). It is also undisputed that Day was not cooperative: he repeatedly changed position despite the officer's instructions to remain seated upright, and he argued with the officers to let him go. More importantly, Officer Denny and Sergeant Wooten did not violently yank or jerk Day's arms and shoulders, or any of Day's person for that matter. Furthermore, the handcuffs in *Payne* were much tighter than they needed to be to accomplish the purpose of

detaining the arrestee, to the point of causing visible physical injury. There is no suggestion that the handcuffs used on Day were any tighter than would have been typically used to restrain an arrestee in similar circumstances. In fact, the coroner noted no visible signs of trauma, and the autopsy report indicated no lacerations or contusions on Day's wrists. The rule announced in *Payne* is inapposite.

The other cases pointed to by the plaintiffs to establish a right to be free from excessively tight handcuffs—*Tibbs v. City of Chicago*, 469 F.3d 661 (7th Cir. 2006), and *Rooni v. Biser*, 742 F.3d 737 (7th Cir. 2014)—similarly fail to clearly establish that the officers' conduct violated that right. *Tibbs* recognized that, under certain circumstances, the use of excessively tight handcuffs might constitute excessive force in violation of the Fourth Amendment. 469 F.3d at 666 (citing *Payne*, 337 F.3d at 767). However, we held the officer's actions in that case were objectively reasonable where the plaintiff complained "once about his handcuffs without elaborating on any injury, numbness, or degree of pain." *Id.* Thus, *Tibbs* establishes that, absent any indication an officer is aware the handcuff tightness or positioning is causing unnecessary pain or injury, the officer acts reasonably in not modifying the handcuffs.

Likewise, *Rooni* establishes the right of a person "to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury, if that person presents little or no risk of flight or threat of injury." 742 F.3d at 742. Once again, the key fact is that the officer must *know* the handcuffs will cause unnecessary pain or injury. *Rooni* focused on the importance of multiple and specific complaints by the arrestee about the nature of his pain or injury. *Id.* at 742–43 (collecting cases, distinguishing *Tibbs* because

"plaintiff complained the handcuffs were on too tight but did not indicate the degree of pain," and a case in which the plaintiff complained once but did not elaborate on degree or nature of pain). Because the plaintiff complained only once that the handcuffs were too tight without further elaboration, we concluded "there was nothing that would have alerted [the officer] to the fact that a constitutional violation was looming." *Id.* at 743.

Day never complained that the tightness of the handcuffs was restricting his breathing. The record contains no evidence that there was any indication the handcuffs were the cause of Day's breathing difficulty until the autopsy report was released. Thus, Day's right "to be free from an officer's knowing use of handcuffs in a way that would inflict unnecessary pain or injury" was not violated.[6]

The closely related right asserted by the district court and the plaintiffs is the right to have the arresting officer consider the arrestee's injury or condition when handcuffing the arrestee. The district court erred, however, by relying on *Salyers v. Alexandria Police Department* for the principle that "officers act unreasonably by failing to consider an injury or condition while handcuffing an individual." *Day*, 380 F. Supp. 3d at 827. *Salyers* is an unreported district court opinion. We have conclusively stated that district court opinions cannot clearly establish a constitutional right because they are not binding precedential authority. *Mason-Funk v. City of Neenah*, 895 F.3d

---

[6] We reach this conclusion even without relying on the additional facts that the first paramedic team found Day's breathing and oxygen levels to be good, never requested or attempted to modify Day's handcuffs, and concluded he did not need to be hospitalized for further medical treatment.

504, 509 (7th Cir. 2018). Therefore, if the right relied upon in *Salyers* is a clearly established one, it must be clearly established by some other source.

*Salyers* relied on, and the plaintiffs direct our attention to, our 2009 decision in *Stainback v. Dixon*, 569 F.3d 767 (7th Cir. 2009). That case involved an arrestee with preexisting arm-and-shoulder injuries that were exacerbated when law enforcement handcuffed him behind his back. The arrestee in *Stainback* complained the handcuffs were hurting his shoulders, but never told the officers of his preexisting injuries. If the officers had known of the preexisting injury, we agreed "they certainly would have been obligated to consider that information, together with the other relevant circumstances, in determining whether it was appropriate to handcuff" the arrestee. *Id.* at 773. However, we held the officers were entitled to qualified immunity because they did not use the handcuffs "in a manner that would clearly injure or harm a typical arrestee," and it was not apparent to the officers, nor were they informed, that the arrestee had a preexisting condition that could be aggravated by the handcuffs. *Id.* "[A] reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Id.*

Thus, *Stainback* only clearly establishes the right to have a *known* injury or condition considered, together with other circumstances, by officers when handcuffing. *Stainback* fails to clearly establish that Officer Denny and Sergeant Wooten's conduct was violative. Just as the arrestee in *Stainback* complained generally of shoulder pain but never explained the effect of the handcuffs on his preexisting injury, Day complained he was having trouble breathing but never

complained that this was caused or exacerbated by his hand-cuffs as opposed to his exertion during the chase preceding his arrest. The officers (and apparently Day himself) were also unaware of Day's underlying heart condition, which also con-tributed to his lack of oxygen according to the autopsy report.

In *Stainback*, we acknowledged "in some cases, the fact that an act will cause pain or injury will be clear form the nature of the act itself." *Id.* at 772. We concluded, however, that it would not be clear to the officers that the arrestee's shoulder pain was caused by the act of cuffing his hands behind his back. *Id.* at 773. It is even less obvious under the circumstances of this case that Day's trouble breathing was caused by hand-cuff positioning. The record does not show this would be ap-parent to the officers at the time of the arrest.[7] Accordingly, like the right in *Payne*, *Rooni*, and *Tibbs*, the right at issue in

---

[7] The plaintiffs suggest that the addition of a second pair of handcuffs before the second ambulance arrived is evidence of the officers' awareness that the single pair of handcuffs had been restricting Day's breathing. This is entirely speculative and goes well beyond a reasonable inference to which the plaintiffs are entitled. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). Adding a second pair of handcuffs indisputably pro-vides more comfort to an arrestee; there is no reason to believe the second pair was added to relieve Day's breathing as opposed to simply providing more comfort to an arrestee who, at that late point, was obviously suffer-ing a medical trauma. In fact, the district court found the officers added the second pair of handcuffs at that point "because they believed Day was having a medical problem," not because they specifically understood the handcuffs were causing his breathing difficulty. Furthermore, even if the addition of the second pair of handcuffs is evidence that the officers be-came aware that the first pair was restricting his breathing, it would then also be evidence that the officers *did* consider Day's medical condition and modified the handcuffs when it became apparent they were causing a problem. Either way, this fact does not help the plaintiffs.

*Stainback* to have a *known* injury or condition considered by officers when handcuffing an arrestee is not implicated by the facts of this case.

Given the facts as assumed by the district court and the information known to the officers at the time of the arrest, the only right plaintiffs can assert would be the right of an out-of-breath arrestee to not have his hands cuffed behind his back after he complains of difficulty breathing. We find no Seventh Circuit precedent clearly establishing such a right. The cases relied upon by the district court and the plaintiffs present circumstances far different, and therefore cannot clearly establish that the officers' conduct violated Day's rights.

One further point must be addressed. The Supreme Court has stated that even in the absence of existing precedent addressing similar circumstances, "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018). This case is certainly not one of those rare obvious cases. As already discussed, the handcuffs were used in a manner that would not have harmed an average arrestee, and there is no evidence the officers were aware the handcuffs were causing Day's breathing trouble. The officers' conduct under the circumstances was not obviously unlawful.

### III. Conclusion

This case arose from an unfortunate tragedy. However, the officers did not violate any clearly established right. Accordingly, the district court's judgment denying Officer Denny and Sergeant Wooten's qualified immunity defense is REVERSED and the case is REMANDED for proceedings consistent with this opinion.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

May 7, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY CONEY BARRETT, *Circuit Judge*

No. 19-1930

| | |
|---|---|
| SHANIKA DAY, *et al.*,<br>   *Plaintiffs-Appellees*,<br><br>   *v.*<br><br>FRANKLIN WOOTEN, *et al.*,<br>   *Defendants-Appellants*. | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division.<br><br>No. 17-cv-04612<br><br>Tanya Walton Pratt,<br>*Judge*. |

**O R D E R**

No judge of the court having called for a vote on the Petition for Rehearing En Banc filed by Plaintiffs-Appellees on January 23, 2020, and all of the judges on the original panel having voted to deny the Petition for Rehearing,

IT IS HEREBY ORDERED that the Petition for Rehearing and Petition for Rehearing En Banc is DENIED.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit